Case 08-14549    Filed 01/21/09    Doc 71

FILED
JAN 21 2009
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                ) Case No. 08-14549-B-7
                                     )
Bryan David Wells,                   ) DC No. UST-1
                                     )
        Debtor.                      )
_____)

**MEMORANDUM DECISION REGARDING UNITED STATES TRUSTEE'S MOTION TO DISMISS**

Mark L. Pope, Esq., Assistant U.S. Trustee, appeared on behalf of Sara L. Kistler, Esq., Acting U.S. Trustee.

Glen E. Gates, Esq., appeared on behalf of the debtors, Bryan David Wells (the "Debtor").

The United States Trustee ("UST") disputes certain deductions claimed by the Debtor on Form 22A (the "Means Test"). Based thereon, the UST moves to dismiss this case as a presumed abuse of chapter 7 pursuant to 11 U.S.C. § 707(b)(2).[1] In the alternative, the UST contends that the Debtor has the ability to repay a substantial portion of his debts through a chapter 13 plan. The UST asks that the case be dismissed as an abuse of chapter 7 based on the totality of the circumstances of the Debtor's financial situation pursuant to § 707(b)(3) (the "Motion"). In response, the Debtor contends that he would not be required to pay anything to his unsecured creditors in a chapter 13. Based on this court's decision in *In re Baeza*, ___ B.R. ___, 2008 WL 5411118 (Bankr. E.D.

___

[1]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23 (hereafter "BAPCPA").

Cal. 2008), the UST's Motion will be granted.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 707, and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

**Findings of Fact.**

The Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on July 31, 2008. The Debtor is an individual with primarily consumer debts. His scheduled unsecured debts total $121,414 and his scheduled secured debts total $511,913.59. Based on the statement of intention filed with the petition, the Debtor intends to surrender the collateral for all of his secured debt, including his home, three automobiles and a motorcycle.[2] Consequently, the Debtor does not appear to have any remaining secured debt obligations.

The Debtor and his (nonfiling) spouse have a combined current monthly income ("CMI") as stated in his amended Form 22A, the Means Test, of $9,745. Their annualized income (CMI x 12) is $116,940, which exceeds the median income for a family of five in California. The Debtor claims deductions in the Means Test totaling $10,381.71 per month. The resulting "monthly disposable income" is stated to be a *negative* $636.71.

The Debtor's amended Schedules I and J give a slightly different picture of his financial situation.[3] Schedule I lists a combined average monthly gross income (for the

---

[2] The court has already granted relief from the automatic stay with regard to the Debtor's home mortgage and two automobiles.

[3] The CMI stated in the Means Test must reflect the average monthly income received from all sources during the six calendar months *prior* to the filing of the bankruptcy case. This number often does not reflect the actual financial situation at the time of filing.

2

Case 08-14549    Filed 01/21/09    Doc 71

Debtor and his nonfiling spouse) in the amount of $9,729.88. Their average monthly net income (after payroll deductions) is $7,313. Schedule J lists monthly living expenses in the amount of $7,591.29. These expenses include $2,433 per month for rent or a home mortgage, a $200 for home maintenance, $505 for automobile insurance, $1,449.29 per month for installment payments relating to automobile loans, and $231 for a "TSA loan repayment." The Debtor also claims $353 for monthly utility expenses, $140 for internet and cable TV and $100 for "swimming pool service." After deducting all of the expenses on Schedule J, the Debtor reports a *negative* monthly net income of $-278.11. However, the Debtor's home and automobiles are being surrendered and it is not clear that the mortgage, home maintenance, pool service, home and automobile insurance, and automobile payment deductions, totaling $4,687 (64% of the Debtor's net income) give an accurate picture of the Debtor's current financial situation. The UST contends that the Debtor has enough money, after a reasonable allowance for housing and automobile expenses, to pay a substantial portion of the scheduled unsecured debts through a 60-month chapter 13 plan.[4]

**Issues Presented.**

The underlying facts in this case, and the issues presented are virtually identical to the facts and issues raised in *Baeza, supra* 2008 WL 5411118. The analysis which follows is taken from that decision. The first issue is whether this case is presumptively abusive under § 707(b)(2). Second, the court is asked to decide if the case is an abuse of chapter 7 based on the totality of the circumstances of the debtor's financial situation under § 707(b)(3). A threshold question to the second issue is whether the "totality of the circumstances" test requires the court to look forward and decide if the Debtor would actually be required to pay anything to their unsecured creditors through a chapter 13

---

[4]The IRS' "local standard" is $1,109 for housing and utilities (in the absence of a mortgage payment) and $489 for each vehicle owned by the Debtor. Under the IRS standard, the Debtor would be allowed to deduct approximately $2,087 for housing expense, utilities and the payments on two automobiles, less than one-half of the deductions claimed on Schedule J.

1  plan.

2  **Overview of § 707(b).**

3      The chapter 7 case of an individual debtor whose debts are primarily consumer
4  debts may be dismissed under § 707(b)(1) if the court finds, after notice and a hearing,
5  that the granting of a discharge would be an abuse of chapter 7. BAPCPA offers two
6  standards for determining the "abuse" issue. Abuse may be presumed under the objective
7  test prescribed in § 707(b)(2),[5] the Means Test. The function of the Means Test is to
8  estimate the ability of chapter 7 debtors to repay their debts. If the debtor's annualized
9  income exceeds the applicable median family income, and the Means Test shows that the
10 debtor has the ability to repay the lesser of 25% of the nonpriority unsecured claims, or
11 $10,950, over a period of five years, then a presumption of abuse arises. Section
12 707(b)(2)(A) prescribes a comprehensive list of allowable expenses for making that
13 determination.

14     Section 707(b)(3) offers a more subjective test for abuse based on the debtor's
15 good faith and the "totality of the circumstances . . . of the debtor's financial situation
16 . . . ."[6] Unlike the Means Test, the Bankruptcy Code does not define "totality of the
17 circumstances." In addition, there is little case law interpreting the phrase under

---

[5]Section 707(b)(2)(A)(I) states in pertinent part:

"[T]he court shall presume abuse exists if the debtor's current monthly income reduced by the [allowed deductions] . . . and multiplied by 60 is not less than the lesser of–
    (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or–
    (II) $10,950."

[6]Section 707(b)(3) provides in pertinent part:

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider–
    (A) whether the debtor filed the petition in bad faith; or
    (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

4

BAPCPA. Prior to BAPCPA, the Ninth Circuit looked to the "totality of the circumstances" to interpret the term "substantial abuse" in former § 707(b).[7] *In re Price*, 353 F.3d 1135, 1139-40 (9th Cir. 2004). Because Congress retained the phrase "totality of the circumstances" in BAPCPA, the court may look to pre-BAPCPA case law to construe the meaning of that phrase under § 707(b)(3).

**Analysis.**

**Presumption of Abuse.**

The UST contends that the Debtor's case is presumed to be an abuse of chapter 7 because the Debtor's annualized income greatly exceeds the applicable median family income and he has enough "disposable income" to pay at least $10,950 over 60 months. § 707(b)(2). The Debtor's disposable income is in dispute here because he claimed an enormous deduction on the Means Test, $4,110.78 per month, based on contractual payments to secured creditors pursuant to § 707(b)(2)(A)(iii). However, the collateral for all of this secured debt has been or will be surrendered in the bankruptcy.

The Debtor responds that the presumption of abuse does not apply because the monthly deduction for secured debts should be based upon the contracts in effect as of the commencement of the bankruptcy case. He argues that he is entitled to deduct the contractual payments to secured creditors even though he has stopped making the payments and are in the process of surrendering the collateral. There appears to be no dispute that if the contractual payments are considered, then the Debtor will "pass" the Means Test, meaning that his disposable income will be below the threshold for "presumed abuse" as set forth in § 707(b)(2). Conversely, if the payments for surrendered collateral are not considered, then the Debtor will have disposable income

---

[7] Prior to BAPCPA, the court was required to find "substantial abuse" based solely on the "totality of the circumstances" test. The Bankruptcy Code also fixed a presumption *against* abuse in favor of the debtor. With the enactment of BAPCPA, the term "substantial" was deleted from the statute. BAPCPA also dropped the presumption in favor of the debtor. Because BAPCPA lowered the "abuse" standard, the former "substantial abuse" factors are still relevant to the new "abuse" inquiry.

5

well in excess of the threshold which triggers the presumption of abuse.

Alternatively, the UST argues that the Debtor's case is an abuse of chapter 7 based on the totality of the circumstances of the Debtor's financial situation under § 707(b)(3). Subsections 707(b)(2) and (b)(3) are mutually exclusive. The court need not address the § 707(b)(2) argument summarized above, if it otherwise finds an abuse of chapter 7 under § 707(b)(3). Even if the court were to conclude that the Debtor passes the Means Test without creating a presumption of abuse, it is inconsequential if the case is otherwise "abusive" under § 707(b)(3).

Section 707(b)(3) clearly states that the court shall consider whether the totality of the circumstances of the debtor's financial situation demonstrates abuse when the presumption *does not* arise. *See In re Paret*, 347 B.R. 12 (Bankr. D. Del. 2006) (the term "shall" in § 707(b)(3) "explicitly mandates" consideration of the totality of the circumstances to determine whether abuse exists if the presumption of abuse under § 707(b)(2) does not arise or is rebutted); *see also* Eugene R. Wedoff, *Means Testing in the New § 707(B)*, 79 Am. Bankr. L.J. 231, 236 (2005) ("[B]ecause the general abuse provisions of § 707(b)(3) expressly apply when the means test has been rebutted, 'passing' the means test does not preclude a discretionary finding of abuse by the court. . . . [I]f a debtor's overall financial circumstances would easily allow the debtor to repay debts . . . the court may find abuse.").

**Abuse Under the Totality of the Circumstances.**

In *Price*, the Ninth Circuit prescribed some nonexclusive factors for courts to consider when reviewing the "totality of the circumstances" under § 707(b):

> (1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;
>
> (2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;
>
> (3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;
>
> (4) Whether the debtor's proposed family budget is excessive or extravagant;

(5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and

(6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

*In re Price*, 353 F.3d at 1139-40.

The court in *Price* went on to state that the debtor's *ability* to repay his debts is the primary factor in determining substantial abuse; "The primary factor defining substantial abuse is the debtor's *ability* to pay his debts *as determined by the ability to fund a Chapter 13 plan*. Thus, we have concluded that a 'debtor's *ability to pay his debts* will, standing alone, justify a section 707(b) dismissal.'" *Id.* at 1140 (quoting *Zolg v. Kelly, III (In re Kelly)*, 841 F.2d 908, 914 (9th Cir. 1988)) (emphasis added).

The Debtor contends that his ability to pay creditors should not be part of the "totality of the circumstances" inquiry. This issue has been addressed, on similar facts, in a post-BAPCPA chapter 7 decision, *In re Pak*, 343 B.R. 239 (Bankr. N.D. Cal. 2006). The chapter 7 debtor was unemployed for the six months prior to his bankruptcy and, consequently, was not subject to the chapter 7 Means Test and the presumption of abuse standard. After the period of unemployment, the debtor returned to work and was earning an annualized income of more than $100,000. The United States Trustee moved to dismiss the case as an abuse of chapter 7 pursuant to § 707(b)(3). Because the Means Test formula did not apply to the debtor, he argued that his ability to pay debts was not a part of the "totality of the circumstances" test for abuse. The court rejected that argument and granted the United States Trustee's motion stating:

> The Court also finds instructive section 707(b)(3)'s use of the phrase "the totality of the circumstances." Prior to BAPCPA, courts considered whether to dismiss a consumer case for "substantial abuse" under section 707(b)(1) based on the "totality of the circumstances." All courts considered the debtor's ability to pay to be an important factor in this context. It would be counterintuitive to construe this same phrase, as used in BAPCPA, to exclude a consideration of the debtor's ability to pay.[8]

---

[8] The debtor in *Pak* converted his case to chapter 13 and tried to confirm a plan which did not pay anything to unsecured creditors. The court denied confirmation. *In re Pak*, 357 B.R. 549

7

*Id.* at 243 (internal citation omitted).

Turning now to the facts of this case, it appears that at least two of the *Price* factors, the first and second, are relevant. The Debtor and his family have enjoyed an annual income that is substantially more than the applicable median family income in California. They are no longer burdened with oppressive payments to secured creditors which consumed a large percentage of the family's income. There is no showing that the Debtor filed this petition as a result of illness, disability, unemployment, or calamity. The Debtor's own schedules suggest that the Debtor has *the ability to repay* a substantial portion of his unsecured debts based on his current financial situation (after adjusting for the surrendered collateral). In the case of *Hebbring v. U.S. Trustee*, 463 F.3d 902 (9th Cir. 2006), the Ninth Circuit affirmed the dismissal of a chapter 7 case for *substantial abuse* where the debtor could afford to pay as little as 27% to her unsecured creditors over three years. *Id.* at 908-09.

### Predicting Payments in a Hypothetical Chapter 13.

The Debtor argues that the "totality of the circumstances" inquiry compels the court to predict what would be required of the Debtor in a hypothetical chapter 13. He contends, based on the Ninth Circuit's recent decision in *In re Kagenveama, supra* 541 F.3d. at 868, that he could confirm a "zero payment" chapter 13 plan because the chapter 13 Means Test, Form 22C, would show that he does not have any disposable income.[9] If

---

(Bankr. N.D. Cal. 2006). The Bankruptcy Appellate Panel affirmed holding that "projected disposable income" is a "forward-looking" concept and not tied to the prepetition income. *In re Pak*, 378 B.R. 257, 264 (9th Cir. BAP 2007). That reasoning was subsequently rejected by the Ninth Circuit in *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 874 (9th Cir. 2008) (*see* footnote 8, *infra*).

[9] In *In re Kagenveama*, the debtor's chapter 13 Means Test showed that she had a negative disposable income based on her prepetition circumstances. The Ninth Circuit held that a debtor's "projected disposable income" for purposes of chapter 13 plan confirmation (1325(b)(1)(B)) is determined by the statutory formula stated in § 1325(b)(2)-(3), which in turn is tied to the "Means Test" expense calculations in § 707(b)(2). The court ruled that the debtor had no disposable income to pay to her unsecured creditors. 541 F.3d at 877.

the Debtor would not have to pay anything to his creditors through a chapter 13 plan, he contends that a discharge in this case would not be an "abuse" of chapter 7.

The Debtor's argument mischaracterizes the issue and misstates the law. The question before the court is not whether the Debtor *would be required* to pay anything to his unsecured creditors in a chapter 13, but rather, whether he has the *ability to pay* something substantial to his unsecured creditors. The answer to that question appears to be yes. The Debtor focuses on the first half of the operative language in § 707(b)(3)(B), the "totality of the circumstances" phrase without addressing the phrase, "of the debtor's financial situation." By the plain meaning of § 707(b)(3)(B), the court must consider the Debtors' actual financial situation. The test under § 707(b)(3) is not tied to or limited by the statutory Means Test formula that drives § 707(b)(2). For that reason alone, the Debtors' argument should be rejected.

This is not the time or the place to determine what the Debtor would be required to pay in a hypothetical chapter 13.[10] This is not a chapter 13 case and the person to ask the "confirmation" questions in a chapter 13 would be the chapter 13 trustee who is not a party in this case. The Debtor contends that he would not have any "disposable income" under a hypothetical chapter 13 Means Test, but 64% of the Debtor's prepetition net income is now available to use for purposes other than payments on the surrendered collateral. The Debtor does not deny that he now has the *ability to repay* a substantial amount to his unsecured creditors without placing an undue burden on the Debtor or his dependants.

The Debtor's reliance on *In re Kagenveama* is misplaced. *Kagenveama* deals with

---

[10]The chapter 7 bankruptcy court in *Pak* did try to analyze what the debtor would have to pay to creditors in a chapter 13 and found that the debtor could pay $33,497.28 to his creditors through a 36-month chapter 13 plan. 343 B.R. at 244-46. However, in reaching that result, the *Pak* court applied an "anticipated future income" definition to the term "projected disposable income," which was subsequently rejected in *Kagenveama*. 541 F.3d at 874. The *Pak* court had already determined that the case was abusive under § 707(b)(3) based on the debtor's actual ability to pay, and the hypothetical chapter 13 analysis was not necessary to support the ruling.

confirmation of a plan under § 1325. There is nothing in *Kagenveama* to suggest that its holding should be applied to § 707(b). Indeed, even the *Kagenveama* court recognized that the Means Test may not be the end of the inquiry in a chapter 13, "[w]e stress that nothing in our opinion prevents the debtor, the trustee, or the holder of an allowed unsecured claim to request modification of the [chapter 13] plan after confirmation pursuant to § 1329." 541 F.3d at 877. Further, *Kagenveama* only dealt with one element of chapter 13 plan confirmation, the "disposable income" test under § 1325(b)(1)(B). There are other factors which a chapter 13 trustee is entitled to examine and which a debtor must satisfy to confirm a plan in chapter 13. Most notable of these are the "good faith" inquiries under §§ 1325(a)(3) and (a)(7),[11] and the chapter 7 liquidation test under § 1325(a)(4).[12]

---

[11]The court is aware of the pre-BAPCPA case law which held that "good faith" under § 1325(a)(3) does not require a substantial repayment to unsecured creditors. (*Goeb v. Heid (In re Goeb)*, 675 F.2d 1386 (9th Cir. 1982)). However, prior to BAPCPA, the "good faith" inquiry bore some relationship to the debtor's actual financial condition. The debtors in *Goeb* did not have enough disposable income to make a substantial payment to their unsecured creditors. Congress changed the definition of "disposable income" with the enactment of BAPCPA to a formula which, as here, may bear no relationship to the debtor's financial situation. Accordingly, it is not clear that the holding in *Goeb* would still apply when the debtors can actually afford to pay a substantial dividend to their unsecured creditors. Even the *Goeb* court recognized that the debtors must act equitably in proposing their chapter 13 plan. "[T]he court must make its good-faith determination in the light of *all* militating factors." *Id.* at 1390 (emphasis in original). The Debtors refer the court to a recent unpublished bankruptcy court decision, *In re Smith*, 2008 WL 4964720 (Bankr. W.D. Wash.), in which the court concluded, on facts similar to this case, that the chapter 13 plan was filed in good faith so long as it meets the statutory disposable income requirement. At least one other bankruptcy court has found that the "good faith" test was not satisfied when a debtor with no "disposable income" could actually pay his creditors in full. *In re Marti*, 393 B.R. 697 (Bankr. D.Neb. 2008). The court in *Marti* concluded that the Means Test is meaningless when the debtor had no income prior to filing and a substantial income immediately after filing. 393 B.R. at 701. The "good faith" issue appears to be unsettled on these facts in the Ninth Circuit.

[12]11 U.S.C. § 1325(a)(4) provides in pertinent part:

(a) Except as provided in subsection (b), the court shall confirm a plan if–

. . .

10

**Conclusion.**

Based on the foregoing, the court finds and concludes, based on the totality of the circumstances, that the Debtor has the ability to pay a substantial portion of the debts for which he seeks a discharge and that the granting of a discharge in this case would be an abuse of chapter 7. Accordingly, the UST's motion to dismiss will be granted unless the Debtor voluntarily converts his case to chapter 13 and files a chapter 13 plan within 10 days from service of this ruling. If the case is not so converted, then the UST shall submit an order dismissing this case.

Dated: January 21, 2009

W. Richard Lee
United States Bankruptcy Judge

---

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.